Good morning, Your Honors, and may it please the Court, Ellen Moskowitz for the appellant. I would like to reserve three minutes for rebuttal. There are three reasons why Judge Rial's decision Let me ask you a question. Sure. I mean, I know what the California court has said, albeit under a different circumstance, but aren't you criminalizing conduct based upon the phone that your client chooses to use? I mean, I'm a business. If it comes over a landline and I record it, it's not confidential. It's not criminal. But if your client, and I don't know what kind of phone they're using, chooses to use a cell phone, then my recording is criminal. That makes no sense to me. Well, the California legislature did decide to expand the types of devices used. It does make sense to me that if you're a third party and you intercept or receive and you record, absolutely, because the nature of the technology, that is different. But why should the person to whom the call is directed have their conduct criminalized, and what interest does the State have in criminalizing their conduct? Simply because they don't know what kind of phone is being used. But if you receive a cell phone by putting up an antenna or something and record, then necessarily you know that a cell phone is being used. Well, you raise several points, Your Honor, that I'd like to address. First, I think nowadays the amount of phones in use that are strict hard-line telephones are pretty rare. In fact, you can't even buy them anymore. Most people have cell phones or cordless phones, which are considered a type of landline, but it is a cordless phone, and that's what most people have. All that Hilton or any business is required to do is give a five-second warning that we all... It's a far better business practice, I agree. Far better business practice. We hear it all the time from businesses. This call may be recorded. It takes less than three seconds to say it. It's simple. It's not burdensome. I agree. And it's the law. So I don't think we're putting a heavy burden on the business. No, but you're criminalizing conduct. I mean, you're criminalizing conduct based upon what somebody else chooses to do. But that's what the California legislature intended when they expanded the law in 1992. Article 1, Section 1 of the California Constitution protects the right to privacy and... Shouldn't the California court decide that? I mean, I know you say they already have, but why shouldn't this case be certified to the California Supreme Court? Well, the case was removed to the district court under CAFA, as several other cases that were originally filed in California have done. But I think the California Supreme Court has spoken very clearly in Flanagan, Kearney, and Ribas that the type... That the content of the communication is irrelevant, and the type of device is irrelevant at this stage. Perhaps the legislature at some point will re-examine the issue and make it clear that it covers all devices, regardless of hard line, cell phones, cordless phones, etc. But I think that was their intent when they enacted 632.7, was to go from hard line to the new technologies that were available in 1992, which were becoming the cell phones and cordless phones and so on. So it seems to me it's not a burden for any business, and indeed, I'm sure you all have been on the recipient end of your calls may be recorded for quality assurance numerous times. It gives the person who's making the call, whether from a cell phone or a cordless phone, the opportunity to self-censor what information they want the receiver of that communication to know. And once I know that my call is being recorded, then I can choose to either end the telephone call or be careful of what I say. We as California citizens want to protect that very important information that's being stored on data. The key thing here is really the recording. That's what we're focused on, is that when we make a phone call, we have a right to know if it's being recorded and if that information that we're putting out there is going to be possibly accessed by somebody else in some other form. Why do you think the legislature found it necessary to make the rights under this particular provision greater than the other statute? You mean then the original 632A? Well, I think in 1967, of course, the only kind of devices we had were hard-wired telephones. And I think it became a concern once there was the advent of cell phones and cordless phones that those kind of – that there were becoming new communication devices that were susceptible to both eavesdropping and interception and other kind of recording opportunities that weren't in existence at the time. And so they were trying to expand the privacy rights. And I think that's also why they omitted the word – Why would the recording capabilities be different if I were using a cordless phone or a cell phone? Because there have been new devices in recording capabilities. There are all kinds of particular recording capabilities that the business now has to record a call. And some of that, apparently, the legislature felt it was easier to record those cell phone and cordless calls. That's the language the legislature chose to use. But again, as both Flanagan and Kearney pointed out, they believe that the legislature intended that all communications be protected regardless of the content of the communication. But they didn't. If it's over a landline, it wasn't protected. I mean, the interest that you said that California citizens have really applies equally to people who use landlines as cell phones. Correct. Although under 632A, it does have to be a confidential communication, whereas under 632.7, they specifically omitted the term – But a coherent statute would have – which is what Flanagan talked about – wouldn't draw the distinction that's being drawn here. But the Supreme Court did specifically say that the Privacy Act has long been held to prevent one party to a conversation from recording it without the other's consent. They said that in the Rebus case. They said it in Flanagan. And they said it in Kearney. We have three different versions of the California Supreme Court interpreting 632.7, saying that it's meant to cover a different kind of communication and different kind of devices. But you would admit that Flanagan, at least, which is the best case for you, is – I mean, factually, it is so clearly distinguishable that I don't – and this might not be a holding. It might be considered dictum, and it's part of the reasoning of the court. Why shouldn't the California courts work – the California court work this out? I mean, it frankly makes no sense to me why the nature of the telephone being used should dictate the outcome. And I can – we can play games about statutory construction, about plain language, about defeating the purpose of the statute. We can talk about the coherence language of Flanagan. We can talk about defeating the purpose of the statute by applying plain language. I mean, that's lawyers' games. But the fact of the matter is, when push comes to shove, this really is what did the legislature intend. And I know the case was removed, but as I – I don't think there's any prohibition in the certification statute to prevent a certification in a removed case. Well, I think every time the California Supreme Court has been presented with this issue of interpreting the privacy statutes, they have given it the most expansive, broadest interpretation. And I think it's unlikely that were this case to go directly to the Supreme Court, they would do anything other than give it the most expansive reading possible to protect our privacy rights. You're absolutely correct that perhaps it's something that the legislature should revisit and clarify. But they've certainly had that opportunity since Flanagan and Kearney was decided in 2006. They've had the opportunity to go back and change it if they so desired or if someone else wanted to point out, you know, did you mean to cover all possible telephonic devices. It certainly seems like they did. Certainly that's the indication that the Supreme Court has given as well as the district courts, most of the district courts that have interpreted it. I'd like to address also your question about the distinction in the Flanagan case about the facts being so different. Interesting set of facts reading that case. But you'll note that at one point the Supreme Court really did do some analysis of something like 27 separate conversations and did apply both 632 and 632.7 to decide which of these conversations were meant to be confidential and thus be covered under 632 versus which of these might be covered under 632.7 because you would expect any communication there to be protected. Isn't the real question though, and I could be wrong about this, and I know what the language says and if you receive a call, you're the intended recipient and you receive it. What does intercept or receive mean? Well, I think you have to look at the terms disjunctively as the Brown Court indicated. I'll give you a football analogy even though I'm not a great football fan. If I threw a ball to you, you're the receiver. I'm throwing it directly to you and you catch it. But if Judge Nguyen comes in and she intercepts the ball, she has intercepted that communication. Both of those are separate types of communication, whether you get it directly or whether she intercepts it. The key here is not recording the communication without the consent of all parties. It does say intercept or receive. So every person who receives a communication and records it without their consent is liable under this law. And I think that's absolutely what SIPA was intended to provide. But doesn't it make sense that what the legislature may well have had in mind is interception implies putting up an antenna, trying to intercept an electronic device. I don't know a lot. I mean, God knows I know nothing about electronic communication. But I understand you can get electronic communication without taking any intentional act to do it. You don't have to step in front of the receiver to try to. And isn't it, and what the legislature may well have had in mind, that it doesn't really matter if you record it. It doesn't matter whether you intentionally intercepted or you otherwise received. You're interfering with the privacy of a conversation to which you're not a party. But the legislature was also concerned about California is unmistakably a two-party consent state. In the Kearney case, they specifically pointed out that if a business could maintain a regular practice of recording all conversations with their consumers, that practice would represent a significant inroad into the privacy interest that the statute was meant to protect. They're very clear that it protects the two parties to the communication. Again, Flanagan applies the law that way. Rebus applies the law that way. We have three California Supreme Court cases that apply it in a two-party context. Would you like to save the remainder of your time for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Angela Agrusa on behalf of Respondent Hilton Rule-White. The district court never ruled on 632.7, right? The ruling that Judge Real issued, in fact, encompassed 632.7, but there is... Well, so, you know, I'm reading 632 right here. I'm reading your order. It looks like you prepared the order. With the Court's input, yes, Your Honor. With the Court's input. Well, I don't see any changes to this order. What I see is the name of the lawyers here, and then the order's all nicely crafted, and then I don't see any process. I don't see any additions. I don't see any modifications. I don't see anything other than an attorney-prepared order. The judge did not rule on 632.7, correct? I wouldn't say that, Your Honor. 632.7 was briefed. You're going to have a tough row to hoe. Well, I'm not trying to be cute here. 632.7 was briefed. You prepared the order, right? 632.7 was briefed by the Court, excuse me, to the Court, and it certainly was part of the record. In all candor, though, the basis upon which 632 was raised with the Court has evolved. What we're talking about today is an unprecedented expansion of a criminal statute in the context of civil class actions in which billions of dollars, hundreds of millions of dollars is at issue. Since the filing of Young, which was one of the first of over 100 similar cases that have been filed in California in the last two years, additional work has been done. This is really a case of first impression before this Court. This Court is now tasked with review of the legislative history of the law that surrounds the basis of the statute. How is it a case of first impression when we have Flanagan from the California Supreme Court? And I'm looking at the order here. Flanagan was actually briefed and raised in the Court below. But the way that the order was prepared by you or your office, it says that Flanagan had to do with family matters. So the order had Flanagan cited, but I don't think Flanagan was cited for the proposition of family matters. Flanagan, of course, the genesis of Flanagan was a dispute involving the recording of- But Flanagan does say pretty clearly what he says. But the interesting part about Flanagan, which does acknowledge 632.7, but in a footnote. And what the Court in Flanagan- But it's not just the footnote is expressed, but it also includes it in its reasoning. What the Court does is it actually literally acknowledges that the term confidential communication, those exact words, do not appear in 632.7. The Court in Flanagan was not faced with, confronted with, and provided the breadth of legislative history that surrounds the implementation of 632.7 out of the legislature. The Flanagan Court never reviewed the volume of information that has been provided to this Court. And in fact, no court, Rebus, that my opposing counsel has cited, was not a self-owned case. No court confronted with that has actually found common in any way close to the way the Flanagan Court came out, except for three district courts of late who have been confronted with the volume of legislative history and who have absolutely confirmed that service observing is an exempted aspect from the California Penal Code. Why shouldn't- No, go ahead. I was just going to ask why, assuming that Flanagan and the other cases aren't controlling, why shouldn't the California Supreme Court sort this all out? It's a California statute involving California policy. Our position, Your Honor, is that the time for that to be done is now. This Court has certainly within- No, no, but the question is who doesn't? I mean, as strongly as I may feel, I'm not on the California Supreme Court. Our position is that this Court is best suited at this time to review this volume of information. It is a ripe issue, certainly within the purview of this Court, but more importantly, it's in times of the essence matter. But out of respect, out of federalism concerns and respect for the California legislature and court, shouldn't the California court decide this issue of statutory construction of California law? Certainly the California Supreme Court would have the ability to do so. We don't believe it has the exclusive domain to do so. And because of the implication of the technology, the interstate commerce aspect of what's involved here, it's certainly within the Ninth Circuit's ability. And as I mentioned, it is a time of the essence scenario. We have businesses in California being confronted with business crippling, decimating potential damage awards for the implication and application of a criminal statute to something that the California legislature had said is in the public's interest. Service observing is in the public's interest. Let's assume that we don't have Flanagan as guidance and we're interpreting the statute fresh. Help me understand the ambiguity in the plain language of Section 632.7, because absent that ambiguity, you're not going to get to legislative intent. There are two aspects of ambiguity contained in the statute. The first one is the exception. Under the terms, the very expressed literal terms, the statute exempts out the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of the public utility. On first glance, what does that mean? It's not clear. So you have to go to the legislative record to review what that intent was of the legislature when it came. You never argued this with Judge Reel. No. This has all been briefed for Your Honors, though. Right. It wasn't raised before Judge Reel. Your Honor, that's true. This particular argument was not. The order was phrased. If you had argued this before Judge Reel, you would have included this in the order. You're right, Your Honor. This specific application was not before the – but it is certainly within this Court's discretion to review these arguments. Well, I mean, we could. I mean, we could. I mean, and maybe arguably you should, because Judge Reel, if it's reversed, then he's got to deal with the class action. We'd like for this Court to do so now, since it does have a complete record before it. And because the volume of the legislative history, in addition to the general order 107B, makes expressly clear that service observing is exempted from the California Penal Code. Right. And I saw your argument that the language of subsection B2 has to some extent become obsolete because of the changes in technology. But it seems to me that to the extent that the statute needs to be updated, because it no longer makes sense to differentiate between landlines and cordless phones and cellular telephones, that that's an argument that needs to be directed to the California legislature. I would argue that it's not so much as obsolete. As the appellants themselves point out, and they attach for this Court, the tariff, tariffs exhibit 7 and 8 to their record. Those tariffs show very clearly that the Public Utilities Commission, through general order 107B, and as solidified by the exemption in the California Penal Code, exempts out service observing, monitoring. That is solely within the ambit of the Public Utilities Commission. And the tariffs that are, in fact, in place, make clear the parameters upon which service observing shall be conducted by businesses. So to the extent a business is not complying with the tariff, the Public Utilities Commission has the exclusive jurisdiction to review and reprimand. And, in fact, even within those tariffs and in the general order 107B, the remedies for violations are specifically set out. And they're quite draconian. So your argument is that where the statute says, or serviced furnished and used pursuant to the tariffs of the public utility? There's no other way to read that. So your argument is that this monitoring of a conversation is a service that is done pursuant to a tariff. It's a public utility. It's our position. Is that right? That the tariffs, that the Public Utilities Commission has the exclusive jurisdiction to govern service monitoring through issuance of tariffs. Okay. And now is there a specific PUC tariff that applies to private commercial institutions other than utility, other than the phone companies? General order 107B requires the utilities to lodge tariffs with it that specifically acknowledge the parameters upon which service observing would be permissible. It states in- But does that apply to commercial entities like Hilton? Very much so. But that, again, falls within the purview and jurisdiction. Let me see if I – where in the tariff – let me see if I have that tariff here on my – If you want, Your Honors, look to exhibit – excuse me. Hold on, hold on, hold on. While looking – hasn't that all become anachronistic since the equipment is no longer provided by the – Government general order 107B was entered about 10 years after the original general order that controlled the service observing. And in it, it said because telephone recording equipment was no longer offered by the carriers, they were now privately owned. The same exception, the same rules governing service observing would apply to equipment that was privately owned as well. And general order 107B states that expressly. Where is that in the excerpts of record? The tariff or general order 107B? Yes. The tariff – AT&T tariff and a Verizon tariff appear in appellant appendix exhibits 7 and 8. So if I look at that, I'm going to be able to find what you just said. If you look at that, you will see language in there that specifies the manner in which service observing should be conducted by commercial entities recording. Yes. And then you look to general order 107B and the legislative history of the California Privacy Act, which specifically states that it is not the legislature's intention to interfere in any way with the jurisdiction of the California Public Utilities Commission. And, in fact, general order 107B states that monitoring is lawful conduct. I mean, it – well, I have to look at it. I can't – I haven't – Do you agree that it is perfectly reasonable, whether it did or not, and I think it maybe did it, for the California legislature to criminalize somebody intentionally recording electronic communication, not directed to that person, to the third party, that either by intentional interception or by receipt. Do you agree that that is unlawful under California law? It is an absurd application of the – Well, that's not my question. The question is – I didn't ask it well. A third party intercepts or receives an electronic communication. And technology, as I understand it, permits – you know, that's one of the concerns about privacy. And then records that. Would you agree that that's unlawful under California law? Under 632.7, when a third party intentionally intercepts or inadvertently receives and records, that is absolutely – there is absolute liability under the statute. But the statute doesn't say third party. It – but one cannot – it does not. However, you have to read that statute in the context of 632.5 and .6 and .7. And this section was – the legislature understood it was putting it under the privacy section. Correct. As well, those words, intercept or receive, would be superfluous if that statute was intended to apply to parties to the conversation. The statute would have simply been written that it is illegal to intentionally record. There has to be a significance. So you have to look at why that's there. Moreover, cell phones are already part of the telephone devices that are part of 632. So there wouldn't be a need to add an additional statute to make illegal a party recording a cellular phone call. That still would fall within 632. This section adds, and your estimation is precisely that, third party recording of intercepted or received – inadvertently received conversation. That is, in essence, the only way that that statute makes sense, yes. I'd also like to talk about the – as I mentioned, the relative absurdity of applying 632.7 without the ambit of it still requiring some expectation of confidentiality. Well, you would agree it's better, but I don't quite understand why they just don't say this call might be recorded and be done with. I mean, particularly – I mean, here we do have the communication, I think, of credit card information, which may stop the person from saying, I don't want my credit card information recorded. Service observing and monitoring has been a part of business practices within the state of California since the early 1960s. There is reason to believe that service monitoring is, in fact, an accepted business practice and that consumers do not have an expectation that their calls will not be recorded when they call. But that's almost irrelevant for purposes of today's conversation, because today we're talking about who has the jurisdiction to determine whether service monitoring was done appropriately. We contend it's not statutorily driven and certainly not within the California criminal statute, but that it is, in fact, a regulatory process of which the California Public Utilities Commission has the exclusive jurisdiction. In fact, appellants themselves throughout their reply brief or their responding brief state that it is a regulatory function. And as such, it would be irrational to apply, again, business-crippling, billion-dollar judgments on a class-wide basis to a practice that the California legislature has deemed something within the public's interest. To the extent it was not done appropriately, the California Public Utilities Commission has a mechanism, a means to reprimand, correct, and if necessary, penalize. There were some legislative history items in the record, and when I looked at them, it looked like what they were trying to do was to allow companies to use service monitoring for training purposes. Most service monitoring is done for quality control, to make sure that the consumers' experience with the businesses with whom they conduct business are meeting their needs and expectations. Most all companies, Hilton included, monitors to make sure that their customers and their longtime brand loyal guests are receiving quality care. There is no nefarious motive to service monitoring and recording. It is not an illicit eavesdropping or wiretapping scenario on which every one of these other cases we've discussed today. I mean, this is absolutely irrelevant, but then your time is up. How is the class defined, the purported class? The appellants seek to certify a class of California consumers who called Hilton's customer call center and their calls were recorded without their consent or knowledge. How long do you keep the recordings? Well, now forever. But they're on a loop. People call in, calls are periodically reviewed, and then they're gone. There's no reason to save them. Okay. Thank you, counsel. I'd like to make three quick points on rebuttals for the service observing. First of all, there are no express exceptions for service observing in the statute or the statutory exceptions of 633.5, which lists all the exceptions there are to 632.7 and was enacted at the same time as 632.7. No such exception exists. Second, there's nothing wrong with service observing, but you have to give the warning. In fact, in the documents that we cite to, in the regulations, in the record, even those public utilities say the way you must either do those beep tones to let the person know they're being recorded or you must give a verbal or written warning. That's all that's required. There's nothing wrong with the business wanting to record for training or service purposes. Third, because the 12B6 motion has to be considered on its face, there was nothing in the complaint that alleged that Hilton recorded these calls for service observing reasons. That's a better argument left for summary judgment. It's an affirmative defense. You can't raise it in a 12B6 context in any event because there was nothing in the pleadings that says that's why Hilton was recording the calls. They may have been recording it for that purpose. They may not. There's no evidence in the record yet. That may just be one reason they were recording the call. There may have been others. So on the question that this was raised for the first time on appeal, you would agree then that if we reversed and it got remanded, Hilton could raise this by way of summary judgment? They could raise it by way of summary judgment, but of course we would hope that this court in remanding it back to the district court would do so on three bases. One, that they would ask the court to do a different analysis of 632.7, one that doesn't require a confidentiality requirement. Two, that it does apply in the context of two-party communications. And three, that there is no service-observing exception to be found either under California case law, most notably the cash call case we recently raised, nor the statutory exceptions. Well, I mean, it does have this language here in the statute. Right. But that language in the statute, there's no question that there still may be tariffs to the California Public Utilities Commission. So the argument that somehow that language is now obsolete and you need to write in a service-observing exception for the California legislature really has no merit. The California Public Utilities Commission has spoken on this subject, has said service-observing is entirely proper if there are warnings with the use of equipment that either provides the beep tone or a verbal or written notice to the consumer on the other end of the call that they're being recorded. Again, it's simple. It's not burdensome. No need for hundreds of lawsuits as if somebody spends five seconds to say this call is being recorded. And then I, as the consumer, can decide how much information I do or don't want to give to Hilton or any other California business. That's what privacy is all about. Okay. Thank you. Thank you, counsel. We appreciate your arguments.
judges: Motz, Paez, Nguyen